IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| COLUMBIA GAS TRANSMISSION CORPORATION, ) ) ) Plaintiff, ) ) v. ) ) AN EASEMENT TO CONSTRUCT, ) OPERATE AND MAINTAIN A 24-INCH ) GAS TRANSMISSION PIPELINE ACROSS ) PROPERTIES IN CHESTER COUNTY, ) PENNSYLVANIA, OWNED BY PAR AND ) PARTHASARARTHY ANBIL, et al. and ) UNKNOWN PERSONS AND INTERESTED ) PARTIES, ) ) Defendants. ) | C.A. No. 02-CV-3733 |

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR IMMEDIATE ACCESS AND POSSESSION OF
EASEMENTS CONDEMNED FOR PIPELINE
REPLACEMENT AND MOTION FOR EXPEDITED HEARING**

The plaintiff, Columbia Gas Transmission Corporation ("Columbia"), commenced this condemnation action in order to condemn pipeline easements necessary for the Delaware Valley Energy Expansion Project (the "Project") which will provide new natural gas supplies needed to generate 800 megawatts of electric power for this region. As part of the Project approved by the Federal Energy Regulatory Commission ("FERC"), Columbia must replace a segment of its existing Line 1896 with a larger pipeline. In order to meet its construction schedule and meet FERC's one-year deadline for completion of all construction, Columbia must begin work on Line 1896 by August 15, 2002. This will allow Columbia to put Line 1896 back into service before the beginning of the winter heating season. Because there is no dispute as to Columbia's right to condemn the easements, Columbia has moved for immediate access to and possession of the easements. Columbia has also filed a Motion for Expedited Hearing. As demonstrated below, Columbia's motions should be granted because immediate

access and possession is in the public's interest and will not affect the defendants' right to just compensation.

## BACKGROUND

Columbia is a natural gas pipeline company subject to regulation by FERC under the Natural Gas Act, 15 U.S.C. §§ 717-717z. Columbia owns and operates a pipeline system to transport and store gas for its customers in Pennsylvania and other states. By its charter, Columbia is authorized to and is now engaged in the business of storing and transporting natural gas in interstate commerce for public uses and purposes.

On May 17, 2002, FERC issued an Order granting to Columbia a certificate of public convenience and necessity under the Natural Gas Act for completion of the Project, In Re Columbia Gas Transmission Corp., Docket No. CP01-439-000, 99 FERC ¶ 61,190. **A copy of the FERC Order is attached to the Motion as Exhibit A.** Part of the Project, as approved by FERC, requires Columbia to replace a segment of its 10-inch gas transmission pipeline known as Line 1896 with a 24-inch pipeline. **Ex. A. at 2 and 27.** Although the new segment of Line 1896 will be placed in the same location as the replaced segment, Columbia had to obtain new easements for certain properties because the old easement agreements with the defendants in this action specified a 10-inch pipeline and did not explicitly grant Columbia the right to change the size of the pipeline. Columbia attempted to negotiate new easement agreements with all owners of the properties on which the affected segment of Line 1896 is located. Columbia successfully negotiated new easements as to 88 of the properties affected. **See Declaration of Thomas Scott Collier ("Collier Declaration"), attached to the Motion as Exhibit B, at ¶ 6.** As to those landowners who would not agree to Columbia's offer to pay for a new easement, Columbia initiated this condemnation action pursuant to the Natural Gas Act, 15 U.S.C. § 717f(h) and Fed.R.Civ.P. 71A.

The May 17, 2002 FERC Order requires Columbia to complete its construction within one year (i.e. by May 17, 2003).  **Ex. A. at 27.**

The replacement of Line 1896 will take approximately three months.  During the replacement work, Line 1896 will be taken out of service.  **Collier Declaration at ¶ 4.**  In order to meet Columbia's obligations to its existing customers, it is vital for the replacement of Line 1896 to be completed and have the pipeline back in service before the beginning of the 2002-2003 winter heating season (which traditionally begins in mid-November).  The only way to meet that deadline and keep Line 1896 in service during the winter heating season is to do the replacement work before the winter heating season begins.

In order to complete construction by mid-November, Columbia must have access to all properties no later than August 15, 2002.  The amount of time required to complete construction will vary with the location of the properties, the amount of appurtenances that require removal, terrain and other issues.  **Collier Declaration at ¶ 9.**  Pipeline construction is most efficient, however, when the contractor can move from property to property without having to skip properties due to lack of access.  Skipping properties requires equipment loading and unloading for all phases of the construction process, which equates to additional time and costs.  **Collier Declaration at ¶ 10.**  Accordingly, in order to ensure completion by mid-November, Columbia must have access by August 15, 2002 to all affected properties.

Columbia will suffer substantial harm if it is unable to meet its construction schedule.  A delay in construction on Line 1896 will delay the entire Project and could prevent Columbia from meeting its contractual obligations to provide new gas supplies to its customer in this region.  **Collier Declaration at ¶ 11.**  Moreover, any delay in construction will endanger Columbia's ability to transport gas to existing customers during the winter heating season.  **Collier Declaration at ¶ 11.**

The public will also suffer substantial harm if Columbia is unable to meet its construction schedule because there is a strong public interest in receiving additional sources of energy, in the jobs that will be created by the Project, and in having the replacement work done in a timely manner so that Line 1896 will be in service during the winter heating season.  **Collier Declaration at ¶ 12.**

The landowners affected by the condemnation will not suffer any harm by the grant of immediate access because all of the properties affected are already burdened by pipeline easements which allow for the operation, maintenance and replacement of a 10-inch pipeline.  **Collier Declaration at ¶ 13.**  FERC noted in its Order that most of the properties are already burdened by two pipelines and that "the replacement pipelines should not affect resale value since two pipelines already exist on the property and Columbia has no plans to add pipelines."  **Ex. A. at 25.**  The increase in the size does not increase the burden on the property – the new segment of Line 1896 will be buried underground in the same location as the old pipeline.  Granting immediate access will not affect the landowners' right to receive just compensation.  **Collier Declaration at ¶ 13.**

## ARGUMENT

There is no dispute that Columbia is vested with condemnation power under federal law.  Section 7(h) of the Natural Gas Act provides:

> **Right of eminent domain for construction of pipelines, etc.**
> When any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of the property to the compensation to be paid for, the necessary right-of-way to construct, operate and maintain a pipe line or pipe lines for the transportation of natural gas, and the necessary land or other property, in addition to right-of-way, for the location of compressor stations, pressure apparatus, or other stations or equipment necessary to the proper operation of such pipe line or pipe lines, it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located . . . .

15 U.S.C. § 717f(h)

-5-

There is no dispute that Columbia has met all of the elements necessary to exercise its condemnation power. Columbia holds a certificate of public convenience and necessity from FERC to replace a segment of Line 1896. **Ex. A.** The fact that FERC has determined that the Project is a matter of public convenience and necessity is a finding which cannot be collaterally attacked in this action. See Tennessee Gas Pipeline Co. v. 104 Acres of Land, 749 F. Supp. 427, 430 (D.R.I. 1990) (collateral attacks on the validity of a FERC certificate may not be decided by the District Court); USG Pipeline Co. v. 1.74 Acres in Marion County, Tenn., 1 F. Supp. 2d 816, 821 (E.D. Tenn. 1998) (questions of validity of a FERC certificate must be brought to the Commission then reviewed by the U.S. Court of Appeals). Columbia attempted to reach an agreement with the owners of the properties for the compensation to be paid for the easements to be condemned but was unable to do so. **Collier Declaration at ¶ 6.** Consequently, in order to proceed with the replacement of the pipeline and to meet the terms of the FERC Order, Columbia condemned the remaining necessary easements. The only issue to be tried in this action is what compensation is due to the condemnees. See Fed. R. Civ. P. 71A(h).[1]

Columbia is entitled to immediate possession of the property to be condemned. See Guardian Pipeline v. 950.80 Acres of Land, 2002 U.S. Dist. LEXIS 5904 (N.D. Ill. 2002); Northwest Pipeline Corp. v. The 20' x 1,430' Pipeline Right of Way Easement, 2002 U.S. Dist. LEXIS 10541 (E.D. Wash. 2002); Tennessee Gas Pipeline Co. v. New England Power, C.T.L., Inc., 6 F. Supp. 2d 102 (D. Mass. 1998); USG Pipeline, 1 F. Supp. 2d 816; Northern Border Pipeline Co. v. 127.79 Acres of Land, 520 F. Supp. 170 (D.N.D. 1981). In condemnation actions, federal courts have "the equitable power to grant immediate entry and possession where such relief is essential to the pipeline construction schedule." Tennessee Gas v. New England

---

[1] Under Rule 71A, the defendants are not required to file Answers to the Complaint unless they are contesting Columbia's right to take the property. Fed.R.Civ.P. 71A(e).

Power, 6 F. Supp. at 104; accord USG Pipeline, 1 F. Supp. 2d at 825-26; Northern Border v. 127.79 Acres, 520 F. Supp. at 172-73.  Here, Columbia has demonstrated that its schedule requires immediate access for three fundamental reasons.  First, Columbia must begin the replacement work by August 15, 2002 in order to complete work and put Line 1896 back in service before the winter heating season begins in mid-November.  **Collier Declaration at ¶ 5.** Second, the terms of the May 17, 2002 FERC Order require all construction work, including the replacement of Line 1896, to be completed within one year (by May 17, 2003).  **Collier Declaration at ¶ 5; Ex. A at 27.**  Third, Columbia must adhere to its construction schedule in order to meet its contractual obligations under the Project and meet its obligations to its existing customers.  **Collier Declaration at ¶ 11.**  In order for Columbia to meet the requirements of the FERC Order and its obligations to customers, Columbia must begin construction by August 15, 2002.  **Collier Declaration at ¶ 5.**

Courts which have granted immediate access have analyzed the issue in terms of entitlement to injunctive relief.  Northwest Pipeline, 2002 U.S. Dist. Lexis at *13-15; Northern Border Pipeline Co. v. 64.111 Acres of Land, 125 F. Supp. 2d 299, 301 (N.D. Ill. 2000).  Here, there is little doubt as to Columbia's likelihood of success on the merits of its condemnation claim.  As demonstrated above, Columbia has the power to condemn and has satisfied all elements required by the Natural Gas Act.  As in any injunction action, courts considering a motion for immediate access have focused on the potential harms to the pipeline company, the public and the landowners.  See Northern Border v. 127.79 Acres, 520 F. Supp. 170 (granting immediate possession to avoid economic harm to pipeline company and harm to public interest); Tennessee Gas v. New England Power, 6 F. Supp. 2d 102 (granting immediate possession to allow pipeline company to meet construction schedule and FERC deadline).  Here, Columbia has demonstrated that it will suffer substantial harm if it cannot begin construction by August 15, 2002 and complete construction by mid-November.  It will not be able to comply with the FERC

Order, meet its obligations under the Project or have Line 1896 back in service for the winter heating season.  **Collier Declaration at ¶ 5 and 11.**

FERC's issuance of a certificate of public convenience and necessity to Columbia is conclusive evidence that the Project, including the replacement of Line 1896, is in the public interest.  The Project will provide a new energy source for the region and new jobs.  The fact that immediate possession is necessitated to comply with a FERC Order justifies the Court's exercise of its equitable power. See Guardian Pipeline, 2002 U.S. Dist. Lexis *7-10; see also, Tennessee Gas, 6 F. Supp. at 104.  In addition, the public has a strong interest in having Line 1896 in operation during the winter heating season.

The landowners will not suffer any substantial harm by the grant of immediate possession.  In most of the cases in which immediate possession was granted, the pipeline project involved a new pipeline across property which was not previously burdened by a pipeline.  See, e.g., USG Pipeline, 1 F. Supp. 816; Northern Border v. 127.79 Acres, 520 F. Supp. 170.  Even in such cases, the courts held that the equities favored immediate possession.  Here, any perceived harm to the landowners is even less because all of the properties involved in this action are already burdened by pipeline easements (many properties actually already have two high-pressure pipelines). **Collier Declaration at ¶ 13.**  Because the properties already are burdened by high-pressure pipelines, there is little harm in granting immediate access.  Under the existing easements, Columbia currently has the right to enter the property to operate and maintain the existing Line 1896.  The most significant change caused by the condemnation will be the change in the size of the pipeline.[2]  The increase in the size of the pipeline does not increase the burden on the property -- the new line will be buried underground in approximately the same location as

---

[2] On some properties, the width or the scope of the easement has also changed (e.g. some properties now include temporary construction easements or staging areas).  The condemned easements are also more explicit as to the rights of the respective rights.  All of those issues, however, are relevant only to the determination of just compensation, not as to the issue of immediate possession.

-8-

the old pipeline.  **Collier Declaration at ¶ 13.**  In approving the Project, FERC considered and rejected various complaints by landowners and noted that "the replacement pipelines should not affect resale value since two pipelines already exist on the property and Columbia has no plans to add pipelines." **Ex. A. at 27.**

Allowing Columbia to replace Line 1896 this summer rather than after just compensation is decided will cause no substantial harm to landowners.[3]  Refusing Columbia's motion for immediate access will frustrate a Project deemed by FERC to be a matter of public convenience and necessity and will cause substantial harm to Columbia.  Columbia's motion for immediate access should be granted.

---

[3] Columbia is willing to post a bond equal to its estimate of the just compensation due.  In cases such as this, the just compensation is measured by the difference in the fair market value of the property with the current easement for the 10-inch pipeline and the fair market value of the property with the condemned easement for the 24-inch pipeline.  See Lyons v. United States, 99 F. Supp. 429, 431 (W.D. Pa. 1951).  The burden of proving the amount of just compensation is on the landowner.  United States v. 15.3 Acres of Land, 154 F. Supp. 770, 783 (M.D. Pa. 1957), rev'd on other grounds, 154 F. Supp. 7 (3rd Cir. 1959).

-9-

**CONCLUSION**

Based on the foregoing, Columbia requests that the Court grant Columbia's Motion for Immediate Access and Possession of Easements Condemned For Pipeline Replacement.

REED SMITH LLP

Date: _____

Thomas J. McGarrigle
Pa. I.D. No. 27868

2500 One Liberty Place
1650 Market Street
Philadelphia, PA  19103-7301
(215) 851-8220

Kevin C. Abbott
Pa. I.D. No. 35734
Nicolle R. Snyder Bagnell
Pa. I.D. No. 87936

435 Sixth Avenue
Pittsburgh, PA  15219
(412) 288-3804

Attorneys for Plaintiff
Columbia Gas Transmission Corporation

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing has been served by first class mail, postage prepaid, upon the following:

Francis M. Correll, Jr.
Klehr, Harrison, Harvey, Branzburg & Ellers LLP
260 South Broad Street
Suite 400
Philadelphia, PA  19102
Counsel for:  Richard J. and Victoria S. Channell; Edmund and Crista Ford; Joseph K. and Lisa J. Gallick; Michael and Joan Kelly; Jeffrey L. and Carolyn A. Pizagno March; Stuart P. and Deborah W. Sullivan; Sean T. and Margaret F. Sweeney, Lee R. and Martha M. Williams


Michael Sacks
Hamburg & Golden, P.C.
1601 Market Street
Philadelphia, PA  19103
Counsel for John Alexander Churchman


H. Michael Cohen
144 West Market Street
West Chester, PA 19382
Counsel for: Herbert J. McCorry


Kevin R. Boyle
Stradley Ronon Stevens & Young, LLP
30 Valley Stream Parkway
Malvern, PA  19355
Counsel for:  Archbishop of Philadelphia


Robert Michael Firkser
Del Sordo & Firkser
333 West Baltimore Pike
P.O. Box 606
Media, PA  19063
Counsel for:  Par and Jay Par Anbil


Peter A. Mardinly
Paul, Mardinly, Durham, James, Flandreau & Rodger
320 West Front Street, Box D
Media, PA  19063
Counsel for: Lawrence M. and Karen L. McDermott, Jr.

James T. Owens
25 South Church Street
West Chester, PA  19382-3220
Counsel for: William C. and Alice J. Vache, III; Richard A. and Debra L. Whiting, Jr.


Mary Ann Rossi
MacElree Harvey, Ltd.
740 Springdale Road
Suite 100
Exton, PA  19341
Counsel for: John W. and Elizabeth L. Horigan


Scott E. Yaw
20 Mystic Lane
Malvern, PA  19355
Counsel for: Scott R. and Kerstin R. Marcum

John & Dani Best
900 Jessica Terrace
Downingtown, PA  19335


Sudhir K. and Asha Bhatnagar
904 Victoria Court
Downingtown, PA  19335


Robin D. and Sheryl F. Cree
23 Blakely Road
Downingtown, PA  19335


Carl K. and Miranda B. Croft
6 Sussex Place
Downingtown, PA  19335


Fred V. and Cheryl A. Diers
902 Jessica Terrace
Downingtown, PA  19335


Sayed A. El-Tantawi
127 Governs Circle
Downingtown, PA  19335


General Residential Holdings, Inc.
101 Marchwood Road
Exton, PA  19341

Glenmede Trust Company
4 Cambridge Road
Downingtown, PA  19335

Harris C. Aller, III
4 Cambridge Road
Downingtown, PA  19335

Harold M. and Roberta E. Harper
1 Buckingham Drive
Uwchland, PA  19480

Heritage Commercial Group, Inc.
3326 Old York Road
Suite A-100
Furlong, PA  18925

Robert L.M. and Linda Landenberg
4 Dowlin Forge Road
Downingtown, PA  19335

Frank T. and Anna K. Marino
104 Linda Circle
Downingtown, PA  19335

Gregory J. and Tamara G. Maurer
908 Jessica Terrace
Downingtown, PA  19335

Heritage Commercial Group
3326 Old York Road
Suite A-100
Furlong, PA  18925

Steven J. and Joanne S. McNaughton
280 Moore Road
Downingtown, PA  19335

Gregory G. and C. Ann Miller
906 Jessica Terrace
Downingtown, PA  19335

Gary S. and Mary M. Plank
100 Linda Circle
Downingtown, PA  19335


Douglas B. and Donna G. Prichard
904 Jessica Terrace
Downingtown, PA  19335


Frank J. and Linda B. Reddon
21 Turnstone Way
Downingtown, PA  19335


Francisco T. and Kathleen D. Rivas
3 Dowlin Forge Road
Downingtown, PA  19335


Joseph S. and Linda M. Trigo
3 Sussex Place
Downingtown, PA  19335


Edward J. and Karen E. Walsh
24 Joseph Court
Downingtown, PA  19335


Welsh Ayres Joint Community Association
C/o Paul Rubino, President
129 Longfields Way
Downingtown, PA  19335


David N. and Harriet A. Whittaker
413 Newcomen Court
Exton, PA  19341


Richard P. and Margaret M. Whittaker
1300 Beaumont Lane
Pottstown, PA  19464


Andrew M. and Susan W. Castaldi
C/o Walter Bryer Real Estate
431 Kinberkamuck
Orabell, NJ  07649


Date: _____                    _____