IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| COLUMBIA GAS TRANSMISSION CORPORATION,<br><br>    Plaintiff,<br><br>v.<br><br>AN EASEMENT TO CONSTRUCT, OPERATE AND MAINTAIN A 24-INCH GAS TRANSMISSION PIPELINE ACROSS PROPERTIES IN CHESTER COUNTY, PENNSYLVANIA, OWNED BY PAR AND PARTHASARARTHY ANBIL, et al. and UNKNOWN PERSONS AND INTERESTED PARTIES,<br><br>    Defendants. | C.A. No. 02-CV-3733 |

## DECLARATION OF VICTOR LYNN MCCOY

Victor Lynn McCoy declares:

1. I am a Senior Project Leader for Columbia Gas Transmission Corporation ("Columbia").

2. Columbia currently owns, operates and maintains a 10-inch gas pipeline (Line 1896) in Chester County, Pennsylvania. A portion of Line 1896 runs across properties that are the subject of the above-captioned action.

3. On May 17, 2002, the Federal Energy Regulatory Commission ("FERC") issued a certificate of public convenience and necessity authorizing, among other things, Columbia to remove a segment of the existing 10-inch pipeline and replace it with a 24-inch pipeline.

4. On October 4, 2002, Columbia applied to amend its certificate of public convenience and necessity to reflect changes in the timing of related projects and a notice from the customer for the project that it now will require service at a later date than originally agreed

upon. This amendment does not affect the previously certificated plan to increase the size of Line 1896 from 10-inches to 24-inches.

5. The work to be done on Line 1896 is part of a project which will provide new natural gas supplies needed to generate 1020 megawatts of electric power for the region. The project will benefit the public by providing additional electric supplies and by providing jobs at the plant.

6. The replacement of the affected segment of Line 1896 will take approximately three months. During the replacement work, Line 1896 will be taken out of service.

7. Construction must begin by May 1, 2003 to allow sufficient time for its completion prior to the winter heating season.

8. On some of the properties affected by the replacement of Line 1896, Columbia already owned the right to change the size of the pipeline. As to the other properties, the right-of-ways across those properties specified a 10-inch pipeline and did not explicitly grant Columbia the right to change the size of the pipeline. Columbia attempted to negotiate new pipeline easements for those properties. Negotiations included phone calls, personal visits and written correspondence. Of the properties affected by the replacement for which Columbia did not already own the right to change the size of the pipeline, Columbia obtained by negotiation new easements for 88 properties prior to initiating this condemnation action and 42 additional properties since then.

9. As to those owners who would not accept Columbia's offer for a negotiated easement, Columbia initiated this condemnation action. Each of the landowners who are defendants in this action received and failed to accept offers in excess of $3,000.

10. The construction across the affected properties (both those condemned in this action and those acquired through negotiation) will vary according to the construction activities that are required on the various properties and what easements have been condemned or acquired. However, the following is a generic description of the anticipated construction process:

    a. Right-of-way preparation to include removal of any appurtenances, trees, etc. and the installation of any required environmental control or safety control devices.

    b. Right-of-way grading which includes removal and stockpiling of topsoil.

    c. Excavation and removal of the existing 10-inch pipeline.

    d. Preparation of the pipeline trench to receive the new 24-inch pipeline.

    e. Welding of the new 24-inch pipeline; radiographic inspection of the welds.

    f. Lowering-in of the new 24-inch pipeline in the ditch.

    g. Making tie-in welds to other installed portions of the new pipeline.

    h. Radiographic inspection of the tie-in welds.

    i. Coating of the welds.

    j. Padding and backfilling of the new pipeline.

    k. Restoration of the affected property.

    l. Hydrostatic testing of the total pipeline once all segments have been completed.

    m. Removal of the test water.

    n. Purging and pressurizing of the new pipeline with natural gas to operating pressure.

11. The amount of time required to perform this work across each individual property varies with location, the amount of appurtenances that require removal, terrain and other issues.

12. The properties being condemned are spread out sporadically over the entire length of the Line 1896 replacement. Right-of-entry is required to ensure that an efficient construction process can be utilized. Pipeline construction is most efficient when the contractor can move from property to property without having to skip properties due to lack of access. Skipping properties requires equipment loading and unloading for all phases of the construction process. This equates to additional time and costs.

13. Columbia will suffer substantial harm if it is unable to meet its construction schedule. A delay in construction on Line 1896 will delay the entire Project and could prevent Columbia from meeting its contractual obligations to provide new gas supplies to its customer and this region.

14. The public will also suffer substantial harm if Columbia is unable to meet its construction schedule because there is a strong public interest in receiving additional sources of energy, in the jobs that will be created by the project, and in having the replacement work done in a timely manner.

15. The landowners affected by the condemnation will not suffer any harm if Columbia is granted access to begin work on May 1, 2003. All of the properties at issue here are already burdened by pipeline easements. The increase in the size of the pipeline does not increase the burden on the property -- the new pipeline will be buried underground in approximately the same location as the old pipeline. Granting immediate access will not affect the landowners' right to receive just compensation.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

_____
Victor Lynn McCoy