IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

COLUMBIA GAS TRANSMISSION           )
CORPORATION,                        )
                                    )
     Plaintiff,                     )          C.A. No. 02-CV-3733
                                    )
v.                                  )
                                    )
AN EASEMENT TO CONSTRUCT,           )
OPERATE AND MAINTAIN A 24-INCH      )
GAS TRANSMISSION PIPELINE ACROSS    )
PROPERTIES IN CHESTER COUNTY,       )
PENNSYLVANIA, OWNED BY JAY PAR      )
AND PAR ANBIL, et al. and UNKNOWN   )
PERSONS AND INTERESTED PARTIES,     )
                                    )
     Defendants.                    )

**PLAINTIFF COLUMBIA GAS TRANSMISSION
CORPORATION'S REPLY MEMORANDUM AS TO DEFENDANTS
HAROLD AND ROBERTA HARPER'S ANSWER TO
MOTION FOR PARTIAL SUMMARY JUDGMENT**

On March 4, 2003, the Plaintiff, Columbia Gas Transmission Corporation

("Columbia") moved for partial summary judgment as to the objections raised by the defendants

Harold M. and Roberta E. Harper (the "Harpers") to Columbia's legal authority to condemn the

right to replace its existing 10-inch pipeline with a 24-inch pipeline. Of the four

landowners/defendants remaining in this condemnation action, the Harpers were the only ones

who filed an Answer under Fed.R.Civ.P. 71A challenging Columbia's legal authority for the

taking. The Harpers' Response to Columbia's motion for summary judgment fails to establish

any genuine issue of material fact as to Columbia's authority to condemn the easement.

     The issues raised by the Harpers -- the width of the right-of-way, the need to

remove trees within the right-of-way, and their claim that construction could damage the septic

system -- all relate to the amount of just compensation, not Columbia's right to condemn the

easement.

Columbia's motion for partial summary judgment as to the Harpers' Answer[1] should be granted, leaving the issue of just compensation for trial.

## I.    THE HARPERS HAVE NOT CHALLENGED COLUMBIA'S AUTHORITY TO CONDEMN THE EASEMENT UNDER THE NATURAL GAS ACT.

Columbia's motion established that it had met all of the elements for condemnation under Section 7(h) of the Natural Gas Act:

1.    Columbia is the holder of a certificate of public convenience and necessity which authorizes Columbia to replace a segment of Line 1896 with a 24-inch pipeline.  See **Ex. B and F**.[2]

2.    The easement to construct the 24-inch pipeline across the Harpers' property is necessary for the proper operation of the pipeline in accordance with the FERC certificate.  **Ex. B, C, E and F**; and

3.    Columbia was unable to acquire the easement from the Harpers by negotiation.  **Ex. C; Ex. J** (Harold Harper Dep. at 51)**; Ex. K** (Roberta Harper Dep. at 47).

See 15 U.S. §717f(h).

---

[1] Columbia's motion also sought access to the properties by May 1, 2003 in order to meet its construction schedule and meet the requirements of its FERC certificate.  The Harpers' Response did not address the motion for access at all except to say they had no knowledge as to Columbia's schedule.  None of the other remaining defendants have opposed Columbia's motion within 30 days.  The Rivas and Landenberg Defendants have consented to the portion of the Motion for Partial Summary Judgment which seeks access to the properties.  The Archbishop of Philadelphia has not filed any response.  Columbia has filed a motion for expedited consideration of its motion for access.

[2] Exhibits A-K are included in the previously filed Materials Submitted in Support of Plaintiff Columbia Gas Transmission Corporation's Motion for Partial Summary Judgment.  Additional exhibits are attached to this memorandum.

The Harpers' Response *admits* that Columbia is the holder of a FERC certificate of public convenience and necessity for the project and that Columbia was unable to obtain the easement by negotiation.  See **Columbia's Motion at ¶ 1 and Answer of Harpers at ¶ 1.**

Thus, the only element challenged by the Harpers is whether the easement condemned is "necessary."  For the reasons stated below, none of the issues raised by the Harpers creates any issue of fact as to Columbia's authority for the taking but rather only address issues related to just compensation.

## II.    COLUMBIA HAS THE POWER TO DECLARE THE WIDTH OF THE RIGHT-OF-WAY.

The Harpers contend that Columbia's existing right-of-way for the 10-inch pipeline was not 50 feet wide and challenge Columbia's authority to condemn an easement 50 feet wide.  They are clearly wrong on both points.

The Harpers contend that the existing right-of-way agreement for the 10-inch pipeline[3] is not 50 feet wide.  The 1958 Right-of-Way Agreement, **Ex. M**, does not state any width.  Under Pennsylvania law, where no width is specified in the right-of-way agreement, the grant is construed so as to provide the grantee pipeline company the "'reasonable and necessary' use of the right of way within the purpose of the easement and the intentions of the original parties to the grant."  Zettlemoyer v. Transcontinental Gas Pipeline Corp., 657 A.2d 920, 926 (Pa. 1995) (holding that grantee shall have "reasonable and necessary" use of right-of-way and that this gave grantee "right to cut trees and remove growth in order to further construction of

---

[3] The Harpers curiously argue that they are not aware of any right-of-way agreement for the second gas transmission pipeline, Line 1278, on their property.  Although completely irrelevant to the issue raised here, the right-of-way agreement to Line 1278 is a matter of public record and a copy is attached to this Reply at **Ex. L.**

pipelines" pursuant to agreement); see also Columbia Gas Transmission Corp. v. Adams, 646

N.E. 2d 923, 926 (Ohio C.P. 1994) (determining easement's width "by what is reasonably

necessary and convenient to serve the purpose for which the easement was granted"); Columbia

Gas Transmission Corp. v. Burke, 768 F. Supp. 1167, 1173 (N.D. W.Va. 1990) (noting that an

inferred width should be "such as is reasonably convenient and necessary" to protect the purpose

of the easement).  Most courts which have addressed the issue have held that the "reasonable and

necessary" width of a gas pipeline is 50 feet (25 feet on either side of the pipeline).  See

Columbia Gas Transmission Corp. v. Tarbuck, 845 F. Supp. 303, 310 (W.D.Pa. 1994) aff'd, 62

F.3d 538, 544 (3rd Cir. 1995) (applying Pennyslvania law); Columbia Gas Transmission Corp. v.

Savage, 863 F. Supp. 198, 201-02 (M.D. Pa. 1994) (same); Columbia Gas Transmission Corp. v.

Adams, 646 N.E. 2d 923, 926 (Ohio C.P. 1994) (applying Ohio law); Columbia Gas

Transmission Corp. v. Large, 619 N.E. 2d 1215 (Ohio C.P. 1992) (applying Ohio law);

Columbia Gas Transmission Corp. v. Burke, 768 F. Supp. 1167, 1173 (N.D. W.Va. 1990)

(applying West Virginia law).

   Thus, Columbia's existing right-of-way for the 10-inch pipeline is 50 feet wide.

   Even if the right-of-way agreement for the 10-inch pipeline was not 50 feet wide,

that is completely irrelevant as to Columbia's right to now condemn an easement 50 feet wide

for the 24-inch pipeline.  In a federal condemnation, the condemnor, in this case Columbia, has

the sole power to define the scope of the property interest taken and neither the landowner nor

the court can add to or subtract from the easement described in the Complaint.  See United States

v. 38.60 Acres of Land, 625 F.2d 196, 199 (8th Cir. 1980).  Moreover, what is necessary is

determined by the condemnor.  See Williams v. Transcontinental Gas Pipeline Corp., 89 F. Supp.

485, 489 (W.D.S.C. 1950) (in case involving location of pipeline across landowner's property,

court stated that, "The Federal decisions uniformly hold that, granted a valid public purpose to be

furthered by condemnation, a determination by the condemnor of the necessity of a certain

taking to carry out the public purpose is conclusive and cannot be examined by the Court."); see

also Blank v. Columbia Gas of Pa., Inc., 314 A.2d 880, 882 (Pa. Commw. 1974) (applying Pa. state law, court would not interfere with the route chosen by Columbia for right-of-way sought in condemnation).  Courts may review the "necessity" of property to be condemned only in cases of fraud, bad faith, or gross abuse of discretion.  See id.

In order to properly construct, operate and maintain the 24-inch pipeline, it is necessary for Columbia to have a permanent easement 50 feet wide.  The FERC was aware that Columbia intended to use a 50 foot wide right-of-way on the Harper's property and granted the Order based on that knowledge. See **Ex. B** at 25.  The Harpers have not presented evidence sufficient to create an issue of fact as to the necessity for that width.

Even if the Harpers can establish that the old easement was not 50 feet wide, all they can then try to prove is an entitlement to additional just compensation.  That issue does not bear on Columbia's authority to condemn the easement.

## III.    COLUMBIA'S RIGHT TO CONDEMN THE EASEMENT IS NOT AFFECTED BY THE POSSIBILITY OF DAMAGE TO THE SEPTIC SYSTEM

Over 14 years *after* Columbia's predecessor obtained the right-of-way and installed the two gas transmission pipelines across the property now owned by the Harpers, the predecessors to the Harpers installed a septic system with a drainage field which encroaches upon Columbia's 50-foot right-of-way.  The Harpers now claim that the construction of the new pipeline "could possibly" damage the septic system and that, if the septic system cannot be replaced, "[t]his creates a genuine issue of material fact as to whether Columbia is taking the entire property, not just an easement." **Harpers' Memorandum at 4.**

Any issue as to damage to the septic system and any resulting impact on the fair market value of the property relates only to just compensation, not the authority for the taking.[4]

FERC has already definitively decided that the possibility of damage to the septic system is not a basis to deny Columbia the easement. Before the FERC certificate was issued, the Harpers raised their arguments regarding the septic system. **Ex. H.** The fact that FERC, after considering the Harpers' objections, found that Columbia's project was a matter of public convenience and necessity is a finding that cannot be collaterally attacked in this action. See Tenn. Gas Pipeline Co. v. 104 Acres of Land, 749 F.Supp. 427, 430 (D.R.I. 1990).

## IV.    COLUMBIA HAS THE RIGHT TO CLEAR TREES WITHIN ITS RIGHT-OF-WAY.

Finally, the Harpers argue that Columbia plans to "cut a 50-foot swatch through a residential development in accordance with a 'bare-earth' policy." **Harpers' Memorandum at 6-7.**

First, Columbia is not "cutting a 50-foot swath through a residential development" -- it has owned and operated two gas transmission pipelines within a 50-foot right-of-way for over 40 years. The residential neighborhood came *after* the pipelines and, as such, all of the landowners, including the Harpers, are prohibited from using their property in any manner which

---

4 At the trial on the issue of just compensation, the Harpers will bear the burden of proving any such damage and impact on fair market value. See U.S. v. 15.3 Acres of Land, 154 F. Supp. 770, 783 (M.D.Pa. 1957), rev'd on other grounds, U.S. v. Delaware, L.W.R.Co., 264 F. 2d 112 (3rd Cir. 1959). Even if this condemnation never occurred, Columbia has the right to replace the existing 10-inch pipeline, see **Ex. M** (Right-of-Way Agreement for Line 1896), which would be done by the same construction method as the 24-inch pipeline. Under well-established Pennsylvania law, the Harpers could not do anything on their property which would substantially interfere with the easement granted to Columbia. See Minard Run Oil Co. v. Pennzoil Co., 214 A. 2d 234 (Pa. 1965); Rodier v. Twp. Of Ridley, 595 A.2d 220 (1991). The Harpers are responsible for any damages caused by their own interference with the easement granted to Columbia.

substantially interferes with Columbia's use of the easement granted to it. See Minard Run Oil Co. v. Pennzoil Co., 214 A. 2d 234 (Pa. 1965). Courts have routinely enforced the rights of Columbia and other gas pipeline companies to keep their easements clear of encroachments which interfere with the safe operation and maintenance of the pipelines. See, e.g, Columbia Gas Transmission Corp. v. Tarbuck, 845 F. Supp. 303 (W.D.Pa. 1994), aff'd 62 F. 3d 538 (3d Cir. 1995) (landowner required to move excess fill placed over pipeline); Columbia Gas Transmission Corp. v. Savage, 863 F. Supp. 198 (M.D.Pa. 1994) (landowner required to remove shed from undefined right-of-way court found to be 50 feet in width); North Penn Gas Co. v. Mahosky, 378 A. 2d 980 (Pa. Super. 1977) (preliminary injunction granted to prevent building of house within pipeline right-of-way); Moyer v. Susquehanna Pipe Line Co., 20 Pa. D. & C. 515 (Pa. C.P. 1934) (pipeline company was not required to pay damages for removal of trees to keep pipeline right-of-way clear); Columbia Gas Transmission Corp. v. Adams, 646 N.E. 2d 923, 926 (Ohio C.P. 1994) (landowners required to remove encroaching asphalt pad); Swango Homes v. Columbia Gas Transmission Corp., 806 F. Supp. 180 (S.D. Ohio 1992) (landowner required to remove shed from right-of-way).

Second, Columbia has never claimed to be condemning the "bare earth" easement described by the Harpers. The Complaint states the extent of the taking. Paragraph 9 refers to the restrictions on the landowners' use of the right-of-way area and it forbids trees in the 50-foot permanent easement. Pursuant to the FERC guidelines and Columbia's own guidelines, Columbia will restore the lawn and the driveway within the right-of-way and will allow small shrubbery in the area except within five feet of the pipeline. See Columbia Gas Transmission Corp. Minimum Guidelines For Construction Activities In The Vicinity of Gas Pipelines,

attached as **Ex. N**. Trees are not permitted in the permanent easement because they interfere with the safe operation and maintenance of the pipeline.[5]

Third, the issues related to the trees have nothing to do with the authority for the condemnation. As with the septic system, the Harpers raised their tree objections with FERC and FERC issued Columbia a certificate of public convenience and necessity despite the Harpers' objections. As stated above, FERC's finding cannot be collaterally attacked in a condemnation proceeding. Kansas Pipeline Co. v. A 200 Foot by 250 Foot Piece of Land, 210 F. Supp. 2d 1253, 1256 (D. Kan. 2002) ("Once the holder of a FERC certificate of public convenience and necessity asks a district court to enforce its right to condemn, the findings in the FERC certificate are treated as conclusive.").

## V.    THE HARPERS DID NOT OBJECT TO COLUMBIA'S MOTION FOR IMMEDIATE ACCESS.

Besides seeking summary judgment as to the Harpers' objections to the taking, Columbia also moved for access to the properties by May 1, 2003 in order to meet its construction schedule, its FERC certificate, and its obligations to its customers.[6]

The Harpers have not opposed the motion for immediate access. Their response to the motion for summary judgment is silent on the access issue except for their statement that they do not have sufficient information to admit or deny Columbia's contention that they need access by May 1, 2003 in order to meet their construction schedule. **Columbia Motion for Partial Summary Judgment at ¶ 3; Harpers' Answer to Motion at ¶ 3.**

---

[5] Even without the change of size in the pipeline, the trees within the permanent right-of-way should never have been planted there and would have to be removed. When encroachments are found within a right-of-way, they must be removed at the landowners' cost. See, e.g., Tarbuck, 845 F. Supp. at 310; Adams, 646 N.E. 2d at 926.

[6] Although the access issue could have been raised separately as a motion for access, Columbia agreed to file it as part of a motion for summary judgment at the October 1, 2002 conference in front of Magistrate Judge Angell.

Having failed to demonstrate the existence of any genuine issue of material fact and further having failed to contest Columbia's statement of the law, Columbia's motion for access should be granted. Besides allowing Columbia to fulfill its obligations under the FERC certificate, granting access will aid in the determination of just compensation. The Harpers' claims of loss in market value are mainly related to their contention that Columbia's construction will destroy the septic system. Such speculative damages claims are not permitted in the determination of just compensation. See Olson v. U.S., 292 U.S. 246, 257, 54 S. Ct. 704, 709 (1934) ("Elements affecting value that depend upon events or combinations of occurrences which, while within the realm of possibility, are not fairly shown to be reasonably probable should be excluded from consideration for that would be to allow mere speculation and conjecture to become a guide for the ascertainment of value..."). If the work is done and the septic system is not damaged, the just compensation issue will then be clear.

## CONCLUSION

Columbia's motion for partial summary judgment should be granted as to the Harpers' objections to the taking, leaving only the issue of just compensation for trial. Columbia's motion for access should also be granted in order to allow Columbia to meet its construction schedule as well as its obligations under the FERC certificate and to its customer.

REED SMITH LLP

Date: April __11__, 2003

Thomas J. McGarrigle
Pa. I.D. No. 27868

2500 One Liberty Place
1650 Market Street
Philadelphia, PA  19103-7301
(215) 851-8220

Kevin C. Abbott
Pa. I.D. No. 35734
Nicolle R. Snyder Bagnell
Pa. I.D. No. 87936

435 Sixth Avenue
Pittsburgh, PA  15219
(412) 288-3804

Attorneys for Plaintiff
Columbia Gas Transmission Corporation

FORM 120 SEE (147 ACRE)

FOR AND IN CONSIDERATION OF ___One and no/100_____Dollars,

to___them_____in hand paid, receipt of which is hereby acknowledged, and the further sum of___Six and no/100_____

(_$ 6.00_)_____Dollars, per rod for right of way and any and all damages from construction and patrolling

to be paid upon the acceptance of the survey now being made by the Company,_____

___Charles La Scala___and___Tilda LaScala,_____, his wife_____

_____

_____(hereinafter called the Grantor 8 ), do  hereby grant

to_The Manufacturers Light & Heat Company_____(hereinafter called the

Company,) its successors and assigns, the right to lay a___14___inch pipe line~~xxxxxxxxxxxxxxxxxx~~and maintain,

operate, repair and remove said lines along a line which has been surveyed for the same over and through___our_____land situate in

___Uwchlen_____Township

___Chester_____County, State of___Pennsylvania_____, bounded and described as follows:

On the North by lands of___Anna M. Hause and Harvey E. Funderwhite_____

On the East by lands of___Public Road ( T. R. No. 205 )_____

On the South by lands of___Wilmer W. Sager, Jr._____

On the West by lands of___Anna M. Hause_____
with the right of ingress, egress and regress to and from the same, the said Grantor to fully use and enjoy the said premises, except for
the purposes hereinbefore granted to the said Company, and said Company to pay any damages which may arise to crops and fences
from the relaying, maintaining and operating said pipe line  ; said damages if not mutually agreed upon, to be ascertained and deter-
mined by three disinterested persons, one thereof to be appointed by the said Grantor_8____their_____heirs or assigns, one
by the Company, its successors or assigns, and the third by the two appointed as aforesaid, and the award of such three persons shall be
final and conclusive. ~~xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx~~ also may change the size of its pipes, the damages, if any, to crops and surface in making such change
to be paid by the Company.

This option shall be null and void unless survey is accepted and consideration mentioned above paid or tendered to grantor within
three (3) years from the date hereof.

_____

_____

IN WITNESS WHEREOF, the Grantor  , set___their____hand and seal this____29_____day of

___July_____A. D. 19_49.

SIGNED, SEALED AND DELIVERED IN PRESENCE OF

_Mary R. Sazagni_____⎫        _Charles La Scala___(SEAL)
                                ⎬        _Tilda La Scala_____(SEAL)
_____⎭        _____(SEAL)

                                         _____(SEAL)

                                         _____(SEAL)

Exhibit L

STATE OF WEST VIRGINIA,  } TO WIT:
COUNTY OF **Philadelphia**

I, ............................................., a Notary Public of said County of ..................

do CERTIFY that ........................................................................................

................................................................................................................

................................................................................................................

whose name........signed to the writing above, bearing date the................day of................19........

ha........this day acknowledged the same before me, in my said county.

Given under my hand, this................day of................18........

My Commission Expires........................................................Notary Public.

of ....................................................County, West Virginia

---

**RIGHT OF WAY**

No. 15024    Work Order No. 7622-1-1-3

FROM

**Charles La Scala, et ux**

Address ........................................

TO

**The Manufacturers Light & Heat Co.**

Dec. **July 29 1949**    Rods of **14 inch Pipe**

Line **72.72**

**Urmian Township**

**Chester County**

State of **Pennsylvania**    **August 30, 1949**

Received for Record. **August 30, 1949** 10

Recorded **August 30, 1949**

Misc. Deed **88**    Page **294**

LAND DEPARTMENT
800 Union Trust Building
Pittsburgh, Pennsylvania

AUG 30 1949

---

STATE OF **Pennsylvania**  } SS:
COUNTY OF **Philadelphia**

Be it remembered that on this **3rd** ................day of ........ **August** ................A. D. 19**49**.

before me, the undersigned, a **Notary Public** ........in and for said County and State personally came the above named

**CHARLES LA SCALA and TILDA La SCALA, his wife**

and acknowledged the foregoing indenture to be **their** voluntary act and deed, for the uses and purposes therein set forth and

desired the same to be recorded as such.

Witness my hand and **notarial** seal the day and year aforesaid.

My Commission Expires **January 7, 1951**

**KATHERINE L. WEISS** (Seal)
NOTARY PUBLIC
My Commission Expires January 7, 1951

---

For and in consideration of One Dollar ($1.00) paid by __The Manufacturers Light and Heat__

__Company__, a __Pennsylvania__ corporation, hereinafter called the Company, to _____

__Harvey E. Funderwhite and Frances E. Funderwhite, his wife__ _____

_____

hereinafter collectively called the Landowner, the receipt whereof is hereby acknowledged, and in further consideration of the

promise of the Company to pay the Landowner __Six and no/100__ _____

($ 6.00 ) Dollars per linear rod of pipeline to be laid on the premises described herein, before entry is made to construct the same, and to pay Landowner for any damage to crops, trees and fences caused by the construction, operation, maintenance, replacement or removal of said pipeline, the Landowner does hereby grant and convey to the Company an easement and right of way

to construct a __10__ inch or smaller pipeline and appurtenant equipment for the transportation of gas, oil, petroleum products or any other materials or substances which may be transported singly or in combination through a pipeline, to construct a telephone or telegraph line; and to operate, maintain, replace and finally remove said lines; over and through all that certain tract of land

situate in __Upper Uwchlan__ Township District, __Chester__ County, State of

__Pennsylvania__, bounded and described as follows:

On the North by lands of __Margaret and Alex Atkinson__

On the East by lands of __State Highway L. R. 15018__

On the South by lands of __Vaughn R. & Walter V. Jackson__

On the West by lands of __R. R. Wenzel, Clarence J. Statts and other__ lands of __Harvey E. Funderwhite and Frances E. Funderwhite__ containing __2 tracts__ acres, more or less, with the right of ingress and egress to and from the same, title to which was derived

from _____ reserving to the Landowner the full use and enjoyment of said premises, except for the rights herein granted to said Company.

The Landowner and the Company have agreed as a part of the consideration hereof that any damages to crops, trees or fences on said premises, the amount of which cannot be mutually agreed upon, shall be determined by a panel of arbitrators composed of three disinterested persons, of whom the Landowner and the Company shall appoint one each and the two arbitrators so appointed shall appoint the third, the award of any two of whom shall be final and a condition precedent to the institution of any legal proceedings hereunder.

~~The Landowner has the right and may at any time lay and maintain an additional line or lines of pipe alongside of the first pipeline or pipelines as herein provided, upon the payment of the same consideration and upon the same terms and conditions as the original line, and the right to lay, maintain, operate and remove said line or lines being subject to the foregoing.~~

The rights, privileges and terms hereby shall extend to and be binding upon the Landowner and the Company and their respective representatives, heirs, successors and assigns.

NOTICE—THIS DOCUMENT MAY NOT SELL, CONVEY, TRANSFER, INCLUDE OR INSURE THE TITLE TO THE COAL AND RIGHT OF SUPPORT UNDERNEATH THE SURFACE LAND DESCRIBED OR REFERRED TO HEREIN, AND THE OWNER OR OWNERS OF SUCH COAL MAY HAVE THE COMPLETE LEGAL RIGHT TO REMOVE ALL OF SUCH COAL AND, IN THAT CONNECTION, DAMAGE MAY RESULT TO THE SURFACE OF THE LAND AND ANY HOUSE, BUILDING OR OTHER STRUCTURE ON OR IN SUCH LAND. (This notice is set forth in the manner provided in Section 1 of the Act of July 17, 1957, P. L. 984.)

WITNESS, the following signatures and seals this __12th__ day of __August__, 19 __58__.

Signed, sealed and delivered
in the presence of:

WITNESS:

_C. E. Fox_ _____

_C. E. Fox_ _____        _Harvey E. Funderwhite_ _____

_____        _Frances E. Funderwhite_ (SEAL)

_____ (SEAL)

_____ (SEAL)

Form LA-19 R/W – PA.                    (Rev. 6-58)

The true, full and complete value of any land, tenement, hereditament or interest herein conveyed by this instrument is $716.12

DEED BOOK 118 PAGE 583

STATE OF Pennsylvania
                                          } SS:
COUNTY OF Cheater

Be it remembered that on this **12th,** day of **August** A. D. 19**58**
before me, the undersigned, a **Notary Public** in and for said County and State personally came the above
named **Harvey E. Funderwhite and Frances E. Funderwhite, his wife**

and acknowledged the foregoing indenture to be **their** voluntary act and deed, for the uses and purposes
therein set forth and desired the same to be recorded as such.

Witness my hand and **Notarial** seal the day and year aforesaid.

My Commission Expires _____                    _____ (SEAL)
                                                                          NOTARY PUBLIC

CLARENCE C. FOX Notary Public
Wernersburg, Chester Co., Pa.
My Commission Expires
February 1, 1961

STATE OF _____
                                          } SS:
COUNTY OF _____

Be it remembered that on this _____ day of _____ A. D. 19_____
before me, the undersigned, a _____ in and for said County and State personally came the above
named _____

and acknowledged the foregoing indenture to be _____ voluntary act and deed, for the uses and purposes
therein set forth and desired the same to be recorded as such.

Witness my hand and _____ seal the day and year aforesaid.

My Commission Expires _____                    _____ (SEAL)
                                                                          NOTARY PUBLIC

REAL ESTATE TRANSFER TAX
PAID ON $ **717.00**

*Jesse B. groff*

Dep. Coll.

---

AUG 12   35 AM '58

| | |
|---|---|
| No. **22872** Work Order No. **1-199-8** | |
| **RIGHT OF WAY** | |
| **21249** | |
| FROM | |
| Harvey E. Funderwhite, et ux | |
| Address Uwchland, Penna. | |
| TO | |
| The Manufacturers Light & Heat Co. | |
| Date **12th, August 1958** | |
| Line **119.33** Rods of **10 inch** Pipe | |
| **Upper Uwchlan** Township | |
| **Chester** County | |
| State of **Pennsylvania** | |
| Received for Record **AUG. 12,** 19 **58** | |
| Recorded above date 19 **58** | |
| MISC. DEED #118 Page 583 | |
| by Helena S. Woleslagle Recorder | |

Return to
LAND DEPARTMENT
100 Union Trust Building
Pittsburgh, Pennsylvania

7/7/58

Form 1 A-21

BOOK **118** PAGE **584**

22822

Right of Way No. _____

THE MANUFACTURERS LIGHT AND HEAT CO.

Grantor _Harvey E. Funderwhite, et ux_

Address _____

Township _Upper Uwchlan_

County _Chester_

State _Pennsylvania_

Date _July 5, 1957_

Line No. _1896_    W. O. No. _1753-L-1445_

_117.33 feet_

Rods of _10"_ Pipe

Paid for Right of Way _____

Paid for Damages _____ $ _____

Total _____

From _____

_R/W obtained - 8-12-58_

To _____

Sent for Record _July, 1957_

Returned _September, 1958_

Book _118_    Page _583_



Columbia Gas
Transmission℠

## Columbia Gas Transmission Corp.
### Minimum Guidelines For Construction Activities In The Vicinity Of Gas Pipelines

Columbia Gas Transmission Corp.'s (Columbia) minimum guidelines for construction activities are intended to ensure the safety of the public and preserve the integrity of Columbia's facilities. Columbia will cooperate to the extent possible in the use of property in the vicinity of its facilities, but to protect public safety and assure the nation's continuous supply of energy deliveries, Columbia cannot allow its facilities and attendant property rights to be compromised.

To minimize conflicts and delays, property owners and developers are encouraged to consult Columbia in the design phase of their project and receive acknowledgement of their construction plans before obtaining zoning permits and committing to construction schedules.

### Construction

No construction or excavation activities of any kind, including blasting, shall be done on Columbia's right of way area before Columbia personnel have established the actual location of all affected facilities and the limits of the ROW area. Columbia personnel must be present during any construction or excavation activities.

### Notification

Columbia must be notified according to the state one-call regulations before construction begins in the vicinity of its facilities. This notification shall be made through the appropriate state one-call notification service, but follow up contact should be made with the local Columbia Gas Transmission office.

### Excavation in the vicinity of pipelines/buried facilities

No excavation shall be made on the pipeline right-of-way without prior notification to Columbia through the state one-call notification service. Subsequent follow-up must be made to Columbia to seek approval for the proposed construction. Approved excavations that are done above, below or within three-feet of either side of the pipeline shall be dug using hand tools.

### Crossing pipelines with heavy equipment

To adequately protect Columbia pipelines from potential damage by heavy equipment crossing the right-of-way, Columbia may require heavy equipment operators to install mats, dirt pads, or other approved protective materials. All proposed road crossings of buried facilities must be evaluated by Columbia personnel. The additional over-burden must be removed after construction unless otherwise directed by Columbia personnel.

### Blasting

Any blasting proposed within 300 feet of Columbia facilities must have prior written acknowledgement by Columbia. Acknowledgement must be requested by submitting a blasting plan for evaluation by Columbia personnel. Any modifications to the blasting plan must be acknowledged by Columbia in writing. The blasting contractor may be required to monitor and record seismic shock at the facilities.

### Directional Drilling or Boring

When directional drilling or boring is proposed under Columbia's pipelines or buried facilities, contractors shall submit plans to Columbia for review. Adequate clearance must be maintained from Columbia's facilities and additional excavations may be required to ensure adequate clearance. As built plans are required for all borings.

### Operating Area of Storage Wells

In order to safely and efficiently operate and maintain Columbia' natural gas storage fields, Columbia requires up to 300-foot or larger clear area around each well. Accordingly, the company requires notification of, and reserves the right to object to, any proposed above-ground or below-ground construction activities or placement of objects closer than 300 feet in any direction of a wellhead.

Exhibit N

**Rights-of-Way**

The requirements listed below are minimum standards that Columbia requires for construction in the vicinity of its pipeline rights-of-way to protect public safety and the integrity of its facilities. A review of individual plans and property rights may reveal more specific requirements.

1. The existing cover over pipelines, which is normally 36-inches, shall be maintained. The minimum earth cover over pipelines at all street and road crossings, including the adjacent ditch line, shall be 36-inches; 60-inches minimum cover shall be maintained at stream and river crossings.

2. Above ground or below ground structures or obstructions of any type shall not be placed within the easement area of any pipeline, which is generally 25 feet each side of the pipeline.

3. Pipeline easements shall not be shared longitudinally with other utilities. All water valves, curb boxes, manholes, etc. must be outside the easement. Other utilities which cross Columbia pipelines must do so at or as near 90 degrees as practical and with a minimum of 12-inches vertical clearance. Any crossing not installed below Columbia's pipelines must have prior written consent from Columbia. Cable or wire utilities must be in conduit the full width of the easement. For safety reasons, all electric and fiber optic lines crossing Columbia's pipelines shall be surrounded with a minimum of six inches of concrete for the full width of the right-of-way. Metallic warning flags shall also be buried above all cable, wire utility, or fiber optic lines crossing a TCO Right-Of-Way. All crossings must be approved by Columbia before installation begins.

4. Roads shall cross pipelines at or as near 90 degrees as practical, but at angles not less than 45 degrees. The entity constructing the street must pay for any measures required by Columbia to protect its pipeline(s). Such protective measures shall be designed and/or approved by Columbia personnel.

5. Paved areas, such as parking lots, shall not be allowed over the easement unless the pavement can be altered so as not to impact the safe and reliable operation and maintenance of Columbia's pipeline. Concrete paving in Columbia's right-of-way is prohibited. Consequently, all plans for pavement within a Columbia right-of-way must be submitted and acknowledged by Columbia personnel before paving can begin.

6. Septic tanks and leach fields should be placed so they drain away from the pipeline where practical. In no case shall they be placed in the easement area.

7. The right-of-way may be planted in lawn and small shrubs (less than 5 feet tall) or may be used for normal agricultural purposes. However, shrubs will not be allowed within 5 feet each side of the pipeline. Shrubs greater than 5 feet tall and trees, including fruit or nut bearing trees of any kind, are prohibited within the right-of-way.

8. Fences that block visual inspection or interfere with access to Columbia's facilities are prohibited within Columbia rights-of-way. Fences permitted by Columbia to cross its rights-of-way must be designed with 12-foot gates centered on the pipelines and must cross at or as near to 90 degrees as possible.

**Note:** *These guidelines supersede any and all prior guidelines and/or directives pertaining to activities and placements on or near Columbia Gas Transmission facilities. Existence of, or the ramifications from, the implementation of prior guidelines will not dictate, direct or provide for exemption of any of the above guidelines.*

January 17, 2001

**For more information, call the appropriate Columbia representative.**

| | |
|---|---|
| Ohio and Pennsylvania: | 330-721-4177 |
| West Virginia & Kentucky: | 304-373-2403 |
| Delaware, Maryland, North Carolina New Jersey, New York, Virginia: | 540-465-6429 |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing

Plaintiff Columbia Gas Transmission Corporation's Reply Memorandum as to Defendants

Harold and Roberta Harper's Answer to Motion for Partial Summary Judgment has been served

by first class mail to the following:

Kevin R. Boyle
Stradley Ronon Stevens & Young, LLP
30 Valley Stream Parkway
Malvern, PA 19355
Counsel for: Archbishop of Philadelphia

Jonathan F. Altman
Tupitza, Altman & Bryman, P.C.
212 West Gay Street
West Chester, PA 19380
Counsel for: Harold M. and Roberta E. Harper

Francisco T. Rivas
257 W. Uwchlan Avenue
Suite A
Downingtown, PA 19335
Counsel for: Francisco T. and Kathleen D. Rivas and Robert L.M. and Linda Landenberg


Date: April _11_, 2003