## ACCESS AGREEMENT

Harold M. Harper, III and Roberta Harper (the "Harpers") and Columbia Gas Transmission Corporation ("Columbia") agree as follows:

WHEREAS, Columbia has filed a Condemnation Action in the United States District Court For the Eastern District of Pennsylvania entitled COLUMBIA GAS TRANSMISSION CORPORATION v. AN EASEMENT TO CONSTRUCT, OPERATE AND MAINTAIN A 24-INCH GAS TRANSMISSION PIPELINE ACROSS PROPERTIES IN CHESTER COUNTY, PENNSYLVANIA, OWNED BY JAY PAR AND PAR ANBIL, ET. AL, C.A. No. 02-CV-3733 ("the Condemnation Action");

WHEREAS, Harold M. Harper and Roberta E. Harper are the owners in fee simple of a residential property that is one of the parcels of real estate that has been condemned in this action;

1.  The Harpers agree that Columbia may have access to their property located at 1 Buckingham Drive, Uwchlan, PA 19480 for the purpose of replacing the segment of Line 1896 which crosses the Harpers' property. Columbia will replace the existing 10" pipeline with a 24" pipeline.

2.  Columbia will commence its work on or after June 25, 2003 at such time as allowed by Columbia's construction schedule. Columbia will give the Harpers at least 48 hours advance notice before beginning work on the property.

3.  The work will be performed by Columbia's pipeline contractor for this project. The work will consist of clearing trees from the permanent right-of-way which are necessary for construction and digging a trench large enough and deep enough to remove the

existing 10" pipeline. The clump birch and red maple trees will be removed. As to the pine trees, the yew and the spruce at the corners of the property, they will not be removed for construction. After construction, Columbia will re-mark its right-of-way. The parties reserve all rights as to the eventual removal of trees in the right-of-way. The trees will not be removed without prior notice and an opportunity to be heard in court. Attached and incorporated by reference are pictures and diagrams of the trees referred to in this paragraph. The trench is not expected to be wider than 12 feet (6 feet on either side of the center of the pipeline) as measured at the surface. The new 24" pipeline will then be installed in a trench which is not expected to be wider than 12 feet (6 feet on either side of the pipeline) as measured on the surface and not deeper than 7 feet. The actual width and depth of the trench will depend on soil and other construction conditions. The spoil from the trench and all heavy equipment will be kept off of the area of the septic drainage field.

4.     Columbia will, at its cost, plant a 4-7 inch diameter tree of like species to the red maple tree currently in the right-of-way at a location chosen by the Harpers off of the permanent right-of-way, with the price not to exceed $4,000.00.

5.     During construction, Columbia will take reasonable steps to avoid damage to the septic drainage field on the Harpers' property. In order to help meet its obligations under this paragraph, Columbia will, at its own cost, retain a consultant who is permitted in Pennsylvania and Chester County to monitor the work in relation to the septic drainage field. The consultant will establish a baseline as to the operation of the field before construction begins and consult with Columbia before construction, during construction and for a period of six months after construction. Columbia will keep the Harpers informed as to the consultant's findings. If any portion of the field is damaged by Columbia's work, Columbia will repair the damage at its cost so as to return the field to the same function that existed before construction began. Repair work will be done according to Columbia's construction standards. Columbia will use its best efforts to leave in place the 10-inch pipeline in the area from the driveway to the

Harpers' property line on Buckingham Drive. If a section of pipeline is left in place, the Harpers acknowledge that Columbia has no responsibility for that segment of line left in place and agree that Columbia may take all steps necessary in the future to safely operate and maintain the new 24-inch line. If Columbia cannot leave the segment of 10-inch line in place, it agrees to pull it sideways so as to minimize impact on the drainage field. Columbia will locate the new line 2-4 feet away from the location of the current line with Columbia moving the line as close to 4 feet as possible.

6. The Harpers agree to cooperate with the work of Columbia and its consultant. Specifically, the Harpers agree that Columbia or its consultant may drain the septic tank prior to commencement of work.

7. Columbia will, if the Harpers request, pay reasonable costs for the Harpers to stay at a residence suite for any days that the septic system is not operable during the time that construction is taking place on their property or if they do not have access to their house. Columbia will also pay reasonable living expenses related to the Harpers being out of their home.

8. After construction, Columbia will re-surface the Harpers' driveway and restore the lawn. The entire driveway will be resurfaced in such a way that it will be at the same level as it is today. Columbia will mill down 2 inches of asphalt on the entire driveway and resurface the entire driveway to its present level. Columbia will restore the lawn using a 50/50 mixture of Kentucky bluegrass (specifically Blue Star, Blue Ridge, Brilliant, Chateau or Kenblue) and tall fescue (*Festuca arundinacea*) grass seed (specifically Rebel, Olympic, Houndog, Falcon or Adventure). The mix of grass seed will not contain more than 5% rye grass. The Harpers have the option of providing to Columbia the seed to be used. The Harpers may, at their own expense, plant shrubs within the permanent right-of-way provided that they are at least

5 feet away from both pipelines (Lines 1896 and 1278) and are no more than 5 feet in height. Columbia will use flush mounted markers in the same location as exist now.

9. This Agreement is limited to settlement of the parties' dispute over access and will not be admissible in any proceeding except as to enforce the agreement as to access. In particular, this Agreement is not admissible in any proceeding to determine just compensation. Both parties reserve all rights and arguments as to just compensation.

10. All of the terms and provisions of the Agreement, whether so expressed or not, shall be binding upon, inure to the benefit of, and be enforceable by and against the parties and the respective legal representatives, successors, heirs, and permitted assigns, including, but not limited to any trustee to the bankruptcy estate of a party.

11. This Agreement represents the entire understanding and agreement between the parties with respect to the subject matter hereof and supercedes all other negotiations, understandings and representations, if any, made by and among such parties, including any prior writings.

12. The parties hereto agree that this Agreement may be executed in one or more counterparts, each of which will be deemed an original, but all of which will constitute one and the same instrument, and each of the parties shall deliver their counterparts to the other parties. Delivery by facsimile to a parties' counsel is acceptable as long as an original "hard copy" follows.

13. This Agreement shall be governed by, construed and enforced in accordance with the laws of the Commonwealth of Pennsylvania, without consideration of conflict of law principles. The parties agree that any action or issue concerning this Agreement

and this case shall be referred to the Court in the first instance or such other judge as designated by the Court for resolution and disposition if the Court is not available.

14. By execution of this Agreement, Columbia and the Harpers warrant and represent that (1) each party to this Agreement has the full power and authority to enter into and to perform its obligations;(2) that each undersigned officer, director, member, partner, agent and/or attorney has the full power and authority to execute and deliver this Agreement on behalf of each corporate party, sole proprietorship, partnership or other business entity to this Agreement ; and (3) this Agreement represents the valid, binding and enforceable obligation of such party. Furthermore, each party to this Agreement acknowledges that the foregoing warranties and representations were an inducement to the other parties to enter into this Agreement . By their signature below, each party to this Agreement hereby acknowledges that it has entered into this Agreement voluntarily, without coercion, duress or undue influence, with full knowledge of its obligations and risks and after having the opportunity to consult with independent counsel.

15. The Agreement may only be amended, supplemented, waived or modified by a writing signed and dated by an authorized representative for each of the parties involved.

COLUMBIA GAS TRANSMISSION
CORPORATION

By: _____

_____
Harold M. Harper, III

Date: _____    Date: _____

_____
Roberta E. Harper

Date: _____